IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Spartanburg Regional Healthcare System, | ) | |
| as Assignee of Brenda Sifford, and | ) | |
| Clyde C. Sifford, as Sole Beneficiary | ) | |
| and Administrator of the Estate of | ) | |
| Brenda Sifford, | ) | |
| | ) | C.A. No. 7:07-1839-HMH |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Sanders Bros., Inc., Sander Bros. Inc. | ) | |
| Plan of Benefits, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Spartanburg Regional Healthcare System and Clyde C. Sifford's (collectively "Plaintiffs") motion for a preliminary injunction and equitable relief pursuant to 29 U.S.C. § 1132(a)(3). For the reasons below, the court denies the Plaintiffs' motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

On January 1, 2006, Brenda Sifford ("Ms. Sifford") was admitted to the Spartanburg Regional Healthcare System ("SRHS") for treatment. (Pl.s' Mem. Supp. Prelim. Inj. 2.) At the time, Ms. Sifford was a beneficiary of the Sanders Brothers, Inc. Plan of Benefits (the "Plan"). (Id.) SRHS alleges that it obtained the proper authorization for Ms. Sifford's treatment and confirmed coverage under the Plan via the Plan's third-party administrator, Blue Cross Blue Shield of South Carolina ("BCBS"). (Id. 2-3.)

1

On January 23, 2006, Ms. Sifford was transferred to the Spartanburg Hospital for Restorative Care ("SHRC"). (Id. 3.) SRHS alleges that it again obtained proper authorization and confirmation from BCBS at that time. (Id.)

On April 1, 2006, the Plan changed its third-party administrator to CoreSource, Inc. ("CoreSource"). (Pl.s' Mem. Supp. Prelim. Inj. Ex. D (Assignment of Rights 1).) In addition, the Plan changed its stop-loss insurance carrier from BCBS to Hartford Life and Accident Company. (Id. Ex. D (Assignment of Rights 1).) SRHS alleges that it obtained all proper authorization and confirmation of coverage from CoreSource. (Id. 3.)

Ms. Sifford continued treatment at SHRC until her death on July 30, 2006. SRHS alleges that throughout her stay, SRHS obtained all proper authorizations and confirmations of coverage from the Plan's third-party administrator, and that Ms. Sifford was a covered beneficiary of the Plan. (Id.) Further, Sanders Brothers, Inc. ("Sanders Brothers") served at all times as the Plan sponsor, named administrator, and fiduciary of the Plan, according to SRHS. (Id.) During her stay, Ms. Sifford incurred covered charges of $978,722.00. (Pl.s' Mem. Supp. Prelim. Inj. Ex. C (Ms. Sifford's Charges 1, 3).)

On April 27, 2007, Clyde Sifford ("Mr. Sifford"), as the administrator of Ms. Sifford's estate, assigned Ms. Sifford's rights under the Plan to SRHS. (Id. Ex. D (Assignment of Rights 1).) SRHS alleges that, despite timely submitting the charges reflected in Exhibit C and attempting to exhaust administrative remedies pursuant to the Plan, Sanders Brothers and the Plan (collectively "Defendants") have failed to pay the charges and have failed to officially deny her claim. (Id. 3-4.) Instead, in a June 8, 2007, letter, the Defendants' counsel, Steven T. Polino ("Polino"), asserted that BCBS was solely obligated to

pay Ms. Sanders' claim, and that any attempt to collect the claim against the Plan would "force the Defendants to file for Bankruptcy." (Id. Ex. F (June 8, 2007, Letter 1-2).) In addition, Polino refused to forward Mr. Sifford's counsel, William H. Foster ("Foster"), a copy of the Plan documents because Foster had "failed to attach any documents substantiating your claim that Mr. Clyde C. Sifford, is the Administrator of the Estate of Brenda Sifford and has the competent legal authority to assign any rights, benefits or claims of Brenda Sifford to [SRHS]." (Id. Ex. F (June 8, 2007, Letter 2).)

On July 13, 2007, SRHS filed a motion for preliminary injunction seeking the following relief:

(1) A declaration that Plaintiffs are the proper representative of the estate of Ms. Sifford and have standing to bring these claims as assignees or representatives of Ms. Sifford, a beneficiary under the Plan;

(2) A declaration that further attempts to exhaust administrative remedies would be futile and that Plaintiffs' claims are ripe for adjudication;

(3) Injunctive relief compelling Sanders Bros., as Administrator, Sponsor and fiduciary of the Plan, from taking any action adverse to the Plan's interests or, in the alternative, appointing an interim administrator for the Plan to ensure that the rights of current and future participants and beneficiaries of the Plan are protected, that the Plan is adequately funded, and that no Plan assets are fraudulently transferred by Sanders Bros.;

(4) Injunctive relief compelling Sanders Bros. as Sponsor and Administrator of the Plan to place sufficient funds in trust to fund the Plan and to ensure coverage of all claims made by participants and beneficiaries, including Plaintiffs' claim for benefits in this matter; [and]

>    (5)   Injunctive relief compelling Sanders Bros. to take all necessary steps to secure prompt payment of Ms. Sifford's claim for benefits.

(Pl.s' Mem. Supp. Prelim. Inj. 1-2.)  The Defendants filed a response on August 2, 2007.

## II.  DISCUSSION OF LAW

Equitable and injunctive relief in ERISA cases is authorized by 29 U.S.C. § 1132(a)(3), which provides that

> [a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

Id.  In determining whether to grant a preliminary injunction in an ERISA case, the traditional standards apply.  See Warner v. Ryobi Motor Prods. Corp., 818 F. Supp. 907, 908 (D.S.C. 1992).  Thus, the court must balance "(1) the likelihood of irreparable harm to the plaintiff if the injunction is denied; (2) the likelihood of harm to the defendant if it is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest."  Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Pub. Sch., 373 F.3d 589, 593 (4th Cir. 2004).

In addition, the Supreme Court has held that "§ 1132(a)(3) authorizes some individualized claims for breach of fiduciary duty, but not where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme."  Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 105 (4th Cir. 2006) (citing Varity Corp. v. Howe, 516 U.S. 489, 512, 515 (1996)).  Thus, "where Congress elsewhere provided adequate relief for a beneficiary's

4

injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Varity Corp., 516 U.S. at 515.

Pursuant to the holding in Variety, the United States Court of Appeals for the Fourth Circuit has held that if "§ 1132(a)(1)(B) affords the plaintiff adequate relief for [his] benefits claim . . . a cause of action under § 1132(a)(3) is . . . not appropriate." Korotynska, 474 F.3d at 107. 29 U.S.C. § 1132(a)(1)(B) states that "[a] civil action may be brought – by a participant or beneficiary – to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In Korotynska, the Fourth Circuit agreed with a majority of circuit courts that "the Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." Id. at 106-107 (internal quotation marks omitted).

In their complaint, the Plaintiffs assert claims under both § 1132(a)(1)(B) for denial of benefits and § 1132(a)(3) for breach of fiduciary duty and equitable estoppel. (Compl. ¶¶ 24-48.) Although the Plaintiffs have not directly addressed the Varity and Korotynska holdings, the court finds that a denial of benefits claim pursuant to § 1132(a)(1)(B) affords the Plaintiffs adequate relief in the instant case. The Plaintiffs are not precluded in any way from pursuing a § 1132(a)(1)(B) claim for denial of benefits and have, in fact, brought such a claim. (Id. ¶¶ 24-33.) Polino's statements in his June 8, 2007, letter that the Plan does not maintain assets sufficient to pay catastrophic claims but instead relies upon stop-loss insurance to pay such claims, are insufficient to render a § 1132(a)(1)(B) claim inadequate or unavailable to provide relief for the Plaintiffs' injury, which consists of a denial of benefits. See

Korotynska, 474 F.3d at 107 ("A plaintiff whose injury consists of a denial of benefits has adequate relief available for the alleged improper denial of benefits through his right to sue the benefit plan directly under section 1132(a)(1), and thus relief through the application of Section 1132(a)(3) would be inappropriate." (internal quotation marks omitted)). Therefore, a preliminary injunction and equitable relief pursuant to § 1132(a)(3) are unavailable to the Plaintiffs in the instant case. Based on the foregoing, the Plaintiffs' motion for preliminary injunction and equitable relief is denied.

Therefore, it is

**ORDERED** that the Plaintiffs' motion for preliminary injunction and equitable relief, document number 16, is denied.

**IT IS SO ORDERED**.

                                                s/Henry M. Herlong, Jr.
                                                United States District Judge

Greenville, South Carolina
August 22, 2007